

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2008

# Monoson v. USA

Precedential or Non-Precedential: Precedential

Docket No. 07-1983

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Monoson v. USA" (2008). *2008 Decisions.* Paper 1493.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1493

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 07-1983

DAVID MONOSON

v.

UNITED STATES OF AMERICA,

Appellant

On Appeal from the District Court of the Virgin Islands
District Court No. 98-cv-00046
District Judge: The Honorable Curtis V. Gomez

Argued December 11, 2007

Before: SMITH, NYGAARD, and ROTH,
*Circuit Judges*

(Filed: February 20, 2008)

Desmond L. Maynard
Shawn E. Maynard Hahnfeld (Argued)
Law Offices of Desmond L. Maynard
P.O. Box 8388
Charlotte Amalie, St. Thomas
U.S. Virgin Islands, 00801
*Counsel for Appellee*

Eric Fleisig-Greene (Argued)
Room 7214
United States Department of Justice
Civil Division
950 Pennsylvania Ave, N.W.
Washington, D.C. 20530
*Counsel for Appellant*

---

OPINION

---

SMITH, *Circuit Judge*.

This case presents a discrete issue:  Is 20 V.I.C. § 555, which limits the recovery of non-economic damages arising from a motor vehicle accident to $75,000, impermissibly retroactive as applied to a case that was pending when it was enacted.  We conclude that it is, and

2

we will affirm the District Court's judgment.

I.

In February of 1991, David Monoson was driving his motorcycle and was hit by a jeep driven by United States Army Recruiter Bryon Phillips. Monoson sustained numerous fractures and lacerations, and required hospitalization for a period of time. After exhausting his administrative remedies, he filed a complaint in February of 1998 against the United States asserting a negligence claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Summary judgment was granted for the United States in February of 2000, but we reversed and remanded in August of 2001 because there were genuine issues of material fact.

On remand, a bench trial was held in February of 2006 before Chief District Judge Curtis V. Gomez. In a memorandum opinion dated December 21, 2006, the District Judge found that both parties were negligent: Recruiter Phillips was 67% liable and Monoson was 33% liable. Consistent with this finding, the District Judge reduced the award of $511,899.39 ($11,899.39 for medical bills and lost wages, and $500,000 for pain and suffering) to $342,972.59.

On December 28, 2006, the United States moved for reconsideration of the award of damages, requesting that the Court reduce the amount of Monoson's judgment consistent with 20 V.I.C. § 555. Section 555, which was enacted in 1999 after Monoson commenced this action, limits the recovery of non-economic damages for any injury to a person in an action arising out of a motor vehicle accident to $75,000.[1] The District Court denied the

<hr />

[1] On August 17, 1999, the Virgin Islands legislature enacted the Short Term Revenue Enhancement Act of 1999 ("STRE Act"). Section 26 of the Act amended Title 20, Chapter 45 of the Virgin Islands Code by adding a new section 555. This new section provides:

> (a) The total amount recoverable for non-economic damages for any injury to a person in an action arising out of a motor vehicle accident may not exceed seventy-five thousand dollars ($75,000); provided, however that this limitation shall not apply upon a finding of gross negligence or willful conduct.
> (b) For the purposes of this section, non-economic damages include:
> > (1) pain and suffering;
> > (2) physical impairment;

motion on January 6, 2007. It concluded that the statute, which was enacted during the pendency of Monoson's FTCA claim, was intended to have only a prospective application. The Court relied upon the fact that the statute did not take effect for 180 days and that there was a possibility that the effective date could be extended. Having concluded that the statute was intended to be prospective, the Court did not consider whether it had a retroactive effect.

The government filed a timely appeal. It contends that the District Court erred by refusing to apply § 555 to reduce the amount of Monoson's judgment.

## II.

The District Court exercised jurisdiction pursuant to

---

> (3) disfigurement; and
> (4) other not-pecuniary damages recoverable under the tort laws of this Territory.

Section 28 of the Act specifies that Section 26, which added the new § 555 limiting non-economic damages, "shall take effect 180 days after the enactment of this Act[.]" *Id.*

5

28 U.S.C. § 1346 and 48 U.S.C. § 1612(a). We exercise final order jurisdiction under 28 U.S.C. § 1291. Our review of a District Court's determination as to whether a law is impermissibly retroactive is plenary. *Cohn v. G.D. Searle & Co.*, 784 F.2d 460, 463 (3d Cir. 1986); *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 486 (3d Cir. 2005).

III.

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court considered whether § 102 of the Civil Rights Act of 1991, which created for a Title VII plaintiff both the right to a jury trial and the right to recover compensatory and punitive damages, could be applied in a case that was pending when the Act was passed by Congress. The Supreme Court concluded that these provisions of the Act could not be applied to actions which were pending when the legislation was enacted because they had a retroactive effect.

The Supreme Court recognized that "[w]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." 511 U.S. at 268. The *Landgraf* Court instructed that a "statute does not operate

6

'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." 511 U.S. at 269-70 (citations omitted). To this end, the *Landgraf* Court articulated a two part test:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280. "Requiring clear intent assures that

Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* at 272-73.

In *Lindh v. Murphy*, 521 U.S. 320 (1997), the Supreme Court instructed that scrutinizing the statutory text of an intervening statute in applying *Landgraf*'s test is not solely for the purpose of determining whether there is an express command regarding the temporal reach of the new provision. *Id.* at 324-25. Rather, the Court instructed that "in determining a statute's temporal reach, generally, our normal rules of construction apply," including "other construction rules" that may "remove the possibility of retroactivity." *Id.* at 326. Thereafter, in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422 (2006), the Supreme Court reiterated the analysis to be employed:

> We first look to "whether Congress has expressly prescribed the statute's proper reach," and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying "our normal rules of construction." If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive

8

consequence in the disfavored sense of "affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment."

*Id.* at __, 126 S.Ct. at 2428 (citations omitted). Thus, even in the absence of a clear command, whether a statute may be applied prospectively or retrospectively might be answered by applying the principles of statutory interpretation to the text of the new law. *Id.*; *see also Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004) ("find[ing] clear evidence [in the statutory language] that Congress intended the Act to apply to preenactment conduct").

## IV.

## A.

Under *Landgraf* and its progeny, we must first determine whether the statute clearly expresses its temporal reach. 511 U.S. at 280. Contrary to the District Court's assessment, the STRE Act does not contain any clear command indicating that the legislature intended the law to be applied prospectively or retrospectively. Instead, there is only a statement that the statute "shall take effect 180

9

days after the enactment of this Act." *Landgraf* instructs that "[a] statement that a statute will be effective on a certain date does not arguably suggest that it has any application to conduct that occurred at an earlier date." 511 U.S. at 257. Although *Landgraf* did not expressly address whether this language established a clear intent that the law operate prospectively, the opinion implicitly suggests that the Court did not find any clear directive in that regard because it proceeded to determine whether there was a retroactive effect.

## B.

*Lindh* and *Fernandez-Vargas* instruct that, in the absence of an unambiguous directive, we should apply normal rules of statutory construction to determine whether the legislature specifically addressed the statute's temporal reach. *Lindh*, 521 U.S. at 326; *Fernandez-Vargas*, 548 U.S. at __, 126 S.Ct. at 2428. Monoson contends that the STRE Act specifies (1) that it is not applicable to the circumstances before us, and (2) that it operates prospectively. Monoson relies on an exception contained in § 713 of the STRE Act for motor vehicles owned by the United States government. He also asserts that the Act specifies that it "shall not apply with respect to any accident, or judgment arising therefrom . . . occurring prior

10

to its effective date." STRE Act, § 710. Both § 710 and § 713 are set forth in Chapter 47 of the STRE Act and each provision explicitly limits its application to *Chapter 47*. Section 555 of the Act, however, is in Chapter 45. As a result, §§ 710 and 713 of the STRE Act have no bearing on the applicability of or the temporal reach of § 555, except that § 713 shows that the legislature knew how to specify unambiguously that the Act shall operate prospectively and did not do so with regard to § 555.

The government also relies on the plain text of § 555 to support its position that the legislature intended this statutory cap to apply regardless of whether the conduct giving rise to the liability occurred preenactment. It submits that the phrase "total amount recoverable" signals that the legislature intended this provision to be "triggered only at judgment[,] . . . not when a claim accrues or is filed." Even if we credit this argument, it is by no means a clear expression that the legislature contemplated that once triggered, the statutory cap should be applied retroactively to limit a plaintiff's recovery for preenactment conduct. Thus, we must determine if the statute in fact has a retroactive effect that would preclude its application in this case.

C.

The government contends that the District Court's refusal to apply this statutory cap on non-economic damages was error because there is no retroactive effect to this statute. Section 555, the government argues, does not have a retroactive effect because the statutory cap does not fit into any of *Landgraf*'s categories, *i.e.*, the statute does not impair any rights possessed by a party, it does not increase any party's liability, and it does not impose upon a party any new duties. 511 U.S. 280. Instead, the government submits, this statutory cap simply reduced the plaintiff's expectation with regard to the amount of any damages that might be awarded at trial. Mere interference with Monoson's expectation, according to the government, does not constitute a retroactive effect.

We are not persuaded that § 555 is a mere interference with an expectation.[2]

---

[2] We are cognizant of *Landgraf*'s observation that "[w]hen [an] intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." 511 U.S. at 273. We reject, however, any attempt by the government to align Monoson's expectancy in an award of damages in his civil action with prospective relief. The prospective relief the *Landgraf* Court considered was equitable relief that "operate[d] *in futuro*." *Id.* at 273-74 (quoting *Am. Steel*

12

Indeed, our precedent instructs otherwise. *Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156 (3d Cir. 1998); *Collins v. Montgomery County Board of Prison Inspectors*, 176 F.3d 679 (3d Cir. 1999) (en banc).

In *Mathews*, we applied *Landgraf* and its progeny to determine whether the Private Securities Litigation Reform Act of 1995 ("PLRSA") had a retroactive effect on an investor's pending cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 161 F.3d at 165. We noted that the PLRSA eliminated securities fraud as a predicate act for purposes of a RICO action, as well as the investor's prospect of recovering treble damages for securities fraud based RICO claims. As a result, the investor was limited to pursuing only a claim of securities fraud. We concluded that this constituted a retroactive effect because "[i]f a change in the law from back pay to compensatory and punitive damages [in *Landgraf*] is seen as *creating* a new cause of action and impairing a party's rights, certainly a change from treble

*Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184 (1921); and *citing Duplex Printing Press Co. v. Deering*, 254 U.S. 443 (1921) (internal quotation marks omitted)). In this case, we are concerned with a claim for money damages.

13

damages (under RICO) to compensatory damages alone (under the securities laws) may be seen as *destroying* a cause of action and impairing a party's rights." *Id.* at 165 (emphasis in original).

The following year, in *Collins*, we again applied *Landgraf*'s retroactivity test to decide whether several provisions regarding attorney fees in the Prisoner Litigation Reform Act of 1995 ("PLRA") were impermissibly retroactive. 176 F.3d at 679. One of the challenged provisions required that, in the event the prisoner obtained a judgment in his favor, a portion of that judgment must be applied toward payment of the prisoner's attorney's fees. *See* 42 U.S.C. § 1997e(d). We concluded that this provision had a retroactive effect

> because under 42 U.S.C. § 1988 when Collins brought this action he could have anticipated applying to the court for an award of all of his reasonable attorney's fees. While undoubtedly even before the enactment of the PLRA various factors might have limited the amount of the award, when Collins brought this action and then applied for the appointment of counsel prior to the PLRA's enactment, he had no reason to believe that the court would order that a portion of his

14

judgment, if he obtained one, would be used to satisfy the attorney's fees that the court awarded. Moreover, the various factors that could have led a court before enactment of the PLRA to reduce a fee application continue to be applicable after its enactment. Thus, we see no escape from the conclusion that the PLRA has a retroactive effect in this case to the extent that it requires that a portion of Collins' judgment be applied to pay attorney's fees.

176 F.3d at 685.

Thus, under *Collins* and *Mathews*, our analysis for retroactivity purposes must focus on: (1) the rights of action that the plaintiff possessed, and the extent of recovery available to him, under the law in effect when he initiated his suit against the defendant; and (2) the rights of action that the plaintiff possessed, and the extent of recovery available to him, in light of the intervening statute. If a new law restricts or impairs the plaintiff's rights of action or the potential recovery available to him under the law in effect when suit was commenced, that new law has a retroactive effect. *Landgraf*, 511 U.S. at 280 (observing that a statute has a retroactive effect if it "would

15

impair rights a party possessed when he acted").[3]

In this case, when Monoson filed suit against the United States he was entitled to damages "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Under Virgin Islands law, a plaintiff alleging a claim of negligence was permitted to recover compensatory damages without

---

[3] The government attempts to distinguish *Collins* on the basis that the retroactive effect in that case resulted solely because the new law imposed a new disability upon the prisoner by obligating him to pay a portion of his attorney fees. Section 555, the government argues, does not have a retroactive effect because it does not impose a new disability on Monoson as he is not obliged to pay any portion of his judgment to another entity. It is true that in *Collins*, § 1997e(d) attaches a new disability or duty on the prisoner. It is also beside the point. This new provision also impaired the plaintiff's right to receive the full amount of damages allowed by law at the time he commenced his suit. In concluding that this provision of the PLRA had a retroactive effect, we relied on the fact that it reduced the amount of the judgment that Collins was entitled to receive. 176 F.3d at 685-86. Accordingly, *Collins* governs our analysis here.

16

limitation. After the enactment of the STRE Act, § 555 imposed a statutory cap of $75,000 on non-economic damages. 20 V.I.C. § 555. This statutory cap severely restricts Monoson's rights, consistent with the law in effect at the time he commenced this action, to recover more substantial compensation for his injuries. Accordingly, in the absence of a clear command that this new statutory cap applies retrospectively, we conclude that § 555 cannot be applied to limit Monoson's recovery of the damages awarded by the District Judge.

We will affirm the judgment of the District Court.