CBC, INC., a corporation, Petitioner,

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

No. 86–1001.

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1988.

Rehearing Denied Oct. 25, 1988.

Lynell G. Skarda, Clovis, N.M., for petitioner-appellant.

Robert D. McGillicuddy (Richard K. Willard, Asst. Atty. Gen., Michael Bradfield, Gen. Counsel, and Richard M. Ashton, Associate Gen. Counsel, with him on the brief), Attorney, Bd. of Governors of the Federal Reserve System, for respondent-appellee.

Before McKAY, BARRETT, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Petitioner CBC, Inc. (CBC) challenges the authority of the Board of Governors of the Federal Reserve Board (Board) to require that certain bank holding companies submit consolidated financial statements that are certified by an independent auditor. CBC also contends that there is no rational basis

for the Board's establishment of a 150 million dollar threshold for the consolidated reporting requirement. We affirm.

## I.

CBC is a one-bank holding company with assets exceeding 150 million dollars. It owns all of the stock of the Citizens Bank of Clovis (Bank). The bank is a New Mexico state bank and is examined by both the Federal Deposit Insurance Corporation and the Director of Financial Institutions of the State of New Mexico. CBC's challenge to the Board's regulatory action is two-pronged. First, it argues that the Board lacks authority to require any bank holding company to submit the independently certified financial statements. Second, CBC contends that the reporting requirement is invalid because it requires audits of the bank holding companies' subsidiary banks, over which the Board has no authority.

The Bank Holding Company Act, 12 U.S.C. § 1841 *et seq.*, "vests broad regulatory authority in the Board over bank holding companies 'to restrain the undue concentration of commercial banking resources and to prevent possible abuses related to the control of commercial credit.'" *Board of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 106 S.Ct. 681, 684, 88 L.Ed.2d 691 (1986) (quoting S.Rep. No. 91–1084, 91st Cong. 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5541). The Board has authority under the statute "to issue such regulations and orders as may be necessary to enable it to administer and carry out the purposes" of the Act. 12 U.S.C. § 1844(b). The Board may also "require reports under oath to keep it informed" regarding compliance with the Act and the Board's duly promulgated regulations. 12 U.S.C. § 1844(c). Board regulations promulgated pursuant to the Act state that holding companies "shall furnish, in the manner and form prescribed by the Board," annual operation reports and any other information and reports the Board requires. 12 C.F.R. § 225.5(b).

In 1985, the Board revised several of its reporting requirements. The revision challenged here changed the information to be reported in Agency Form number FR Y–6. This form, which was adopted on December 15, 1985 after appropriate notice and comment, required that bank holding companies with consolidated assets of 150 million dollars or more submit consolidated financial reports certified by an independent public accountant. Bank Holding Company Reporting Requirements, 50 Fed.Reg. 50,-951 (1985). CBC contends that the Board has no authority under the Act to require such reports from bank holding companies. We disagree.

The Act gives the Board authority to "require reports under oath to keep it informed" as to whether the Act and regulations have been complied with. 12 U.S.C. § 1844(c). The Act does not define "reports," nor does the statute limit the *types* of reports the Board could require. Thus, we must decide whether consolidated financial statements certified by an independent public accountant fall within the scope of "reports" authorized by the Act.

The Board is the agency charged by Congress with administering the Act. 12 U.S.C. § 1844(b). When the Board interprets the Act through its rulemaking authority we must give substantial deference to the Board's interpretation if it "provides a reasonable construction of the statutory language and is consistent with legislative intent." *Securities Industry Ass'n v. Board of Governors*, 468 U.S. 207, 217, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984).

We hold that the Board's independent certification requirement derives from a reasonable construction of the statutory language. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Colorado High School Activities Ass'n v. NFL*, 711 F.2d 943 (10th Cir. 1983). A "report" is defined as "something that gives information" or a "formal account of the results of an investigation by a person or group authorized or delegated to make the investigation (an audit)."

*Webster's Third New International Unabridged Dictionary* at 1925 (1981). Thus, if the word "report" is given its common meaning, the Board's new reporting requirement seems clearly to fall within the statutory authority. Independently certified financial statements provide the Board with information that is qualitatively different from that provided in uncertified financial statements, in a reporting format that may differ from those required by other regulatory agencies. The certification provides the Board with an increased measure of reliability regarding the financial statements. The bank objects to the certification requirement because it requires an audit. The auditing process makes possible the report and certification by the accountant. The resulting documentation is a report. We decline to characterize the requirement of submitting financial statements certified by an independent accountant as anything other than the kind of informative and reliable report envisioned by Congress and authorized by the Act. We will not substitute our judgment with respect to the *kinds* of reports the Board requires where the choice of the Board is clearly reasonable in light of the language of the Act and the intent of Congress in passing the Act.

Having concluded that the Board's reporting requirement falls within the ambit of the statute's plain meaning, we will uphold it unless there is "a clearly expressed legislative intent to the contrary." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Colorado High School Activities Ass'n*, 711 F.2d at 945. In this case we find not only that there is a lack of clear legislative intent to contravene the plain meaning of the word "reports," but that the purposes enunciated in the Act's legislative history support the Board's interpretation of that term.

One of the purposes enunciated in the Act's legislative history and evident throughout the Act, is "to prevent possible abuses related to the control of commercial credit." S.Rep. No. 91–1084, 91st Cong. 2d Sess., *reprinted in* 1970 U.S.Code and Ad-

min.News 5519, 5541. The broad authority that section 1844(c) grants the Board to require reports is a necessary predicate to enhance the Board's ability to carry out this purpose. The Board is better able to detect abuses related to the control of commercial credit if it can require informative and reliable reports. The word "reports" as used in this Act must be broad enough to encompass reliable documentary evidence of the commercial credit practices and the financial positions of bank holding companies and their subsidiaries. Unless the language is so construed, the Board will be hampered in its attempt to carry out one of its principal responsibilities under the Act.

We cannot say that the Board's interpretation is unreasonable. In its justification of the FR Y–6 reporting requirements the Board states:

> The FR Y–6 is the primary source for much of the financial and structural data on individual bank holding companies, their banking and nonbank subsidiaries and other regulated investments. The information enables the Federal Reserve to (1) monitor holding company operations and to insure that the operations are conducted in a safe and sound manner that protects the depositors of the subsidiary banks; and (2) determine holding company compliance with the prohibitions of the Bank Holding Company Act and Regulation.

50 Fed.Reg. 28,026, 28,027 (1985). This justification is consistent with the purposes for which Congress empowered the Board to require reports in meeting its responsibilities under the Act. We uphold the Board's decision to require certain bank holding companies to submit consolidated and independently verified financial statements.

■ In order to satisfy the Board's new reporting requirement, the subsidiary banks owned by affected bank holding companies will have to be audited. CBC argues that the Board has no such authority over the banking subsidiaries. Apparently, CBC contends that because other agencies have regulatory authority over

the banking subsidiaries, the Board lacks jurisdiction to require independent audits.

The Act refutes this argument on its face. Section 1844(c) allows the Board to "require reports under oath to keep it informed." This reporting authorization is limited only by the purposes of the Act. Section 1841(a) gives the Board jurisdiction over "any company which has control over any bank." In order to give effect to the purposes of the Act, the Board must be permitted to require reports from the *banks* owned by bank holding companies.

█ In requiring such reports the statute provides that "[t]he Board shall, *as far as possible,* use the reports of examinations made by the Comptroller of the Currency, the Federal Deposit Insurance Corporation, or the appropriate State bank supervisory authority." 12 U.S.C. § 1844(c) (emphasis added). CBC argues that this section requires the Board to use such reports to the exclusion of Board-instituted reporting mechanisms.

This language cannot be read so narrowly. The phrase "as far as possible" must be read in conjunction with the broad authority to require reports conferred on the Board in the same section of the statute. In our view, this section requires the Board to use other agencies' reports to the extent that those reports provide the same information, with similar assurances of reliability, and in the same timely manner as a certified financial report from an independent accountant. CBC argues that reports based upon FDIC examinations provide the same reliable and timely information as the independent auditor's certified report. Even if we were to assume that the examination methods of FDIC examiners and independent accountants produce reports of comparable reliability, the record shows that complete FDIC examinations are not done on an annual basis at some institutions. The FDIC *Manual of Examination Policies* permits highly rated institutions such as CBC to go without a complete examination for up to thirty-six months. Audits by independent accountants, on the other hand, are consistently performed on an annual basis in order to produce the annual certified report the Board requires on form FR Y-6.

CBC contends that the timeliness problem with reports based on these FDIC examinations can be solved by updating them. However, the methods used to update such reports, including visitations by FDIC examiners and off-site reviews of financial information, can be far less complete than a full FDIC examination. It would not be unreasonable for the Board to conclude that the qualitative differences between a certified financial report based upon a complete annual audit and a FDIC report updated by procedures which are less thorough than a complete examination, make it impossible to obtain the same reliable information from the FDIC reports.

CBC has failed to show that it is possible to get the same reliable, timely financial information from FDIC reports, and it has failed to produce evidence of reports of other agencies which would meet these requirements. Therefore, we cannot conclude that the Board's requirement of certified financial statements from an independent accountant contravenes the statutory requirement to utilize regulatory agencies' reports where possible. The Board has acted within its authority granted by Congress, and without proof to the contrary, we will not substitute our judgment regarding the kind of information required by the Board to fulfill its statutory responsibilities.

## II.

█ CBC also challenges the threshold established by the Board for the applicability of the reporting requirement. Before the 1985 revision, bank holding companies with *banking* assets exceeding 100 million dollars had to submit consolidated financial statements. Under the revised regulations, those reporting requirements apply to bank holding companies with *consolidated* assets exceeding 150 million dollars. CBC argues that there is no rational basis for either threshold.

The Act gives the Board discretion in implementing its reporting requirements.

Section 1844(c) states that the "Board *may* require reports under oath." (Emphasis added.) This discretionary language implicitly authorizes the Board to make reasoned judgments about the kinds of reports it will require and about the bank holding companies from which it will require them. If there is a rational basis for the Board's determinations, *see Wyoming Hospital Ass'n v. Harris,* 727 F.2d 936 (10th Cir. 1984), we cannot say that the Board has acted arbitrarily and capriciously.

The Board is uniquely qualified to determine the point when the size of a bank holding company requires the imposition of more stringent reporting requirements in order to administer the statute effectively.

We hold that the Board acted within its statutory authority in requiring from bank holding companies consolidated financial statements that are independently certified, and in establishing a 150 million dollar threshold for the reporting requirement to attach.

AFFIRMED.