BRISCOE, Circuit Judge,
concurring in part and dissenting in part:
I concur in part and dissent in part. I respectfully disagree with Part II of the majority opinion.[1] In my view, the law of the case does not prevent us from reaching the question of whether the Pension Protection Act (“PPA”) applies retroactively. Additionally, I would conclude that the PPA applies only prospectively and that the pre-PPA version of ERISA did not include Indian tribes under the governmental plan exemption. And, as a result, I would conclude that we need not address whether the district court erred in determining whether the Dobbses’ plan qualifies as a governmental plan under 29 U.S.C. § 1002(32), as amended. I agree with Part III of the majority opinion, but write separately to emphasize why the Dobbses’ fraudulent inducement claim is preempted by ERISA. Accordingly, I would affirm the judgment of the district court.
I
A
The law of the case doctrine does not bar us from considering the issue of retro- *1287 activity. The majority concludes that “[i]n Dobbs I, we decided by necessary implication that § 906 of the PPA applies retrospectively.” Maj. Op. at 1290. I respectfully disagree. “The law of the case doctrine is not an inexorable command but a rule to be applied with good sense.” Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 711 (10th Cir.2004) (quotation omitted).
In Dobbs I, the Dobbses appealed “the [djistrict [cjourt’s dismissal of all claims, arguing that their state-law claims against Anthem [were] not preempted by federal law.” Dobbs v. Anthem Blue Cross & Blue Shield, 475 F.3d 1176, 1177 (10th Cir.2007) (hereinafter “Dobbs I”). We stated:
The threshold question in this case is whether federal or state law applies to an employee benefit plan established and maintained by a tribe for the benefit of its employees. If federal law applies, the next question is whether it preempts the state-law causes of action in this case. We do not reach the second issue concerning preemption because we remand the case so that the [djistrict [cjourt can consider the first question in light of a recent change in federal law.
Dobbs I, 475 F.3d at 1177 (internal citation and footnote omitted; emphasis added). We recognized that “[b]ased on the Dobbses’ complaint, we do not have enough information to determine whether the benefit plan meets the requirements of § 1002(32) and therefore remand the case to the [djistrict [cjourt for consideration in light of the amended definition.” Id. at 1178. “In light of the amended definition of ‘governmental plan’ under ERISA,” we vacated the district court’s previous order and remanded the case to the district court “for further proceedings consistent with this opinion.” Id. at 1179. On remand, the district court concluded that although the Dobbses’ benefit plan met the new definition of governmental plan, the new definition does not apply retroactively. By deciding whether the PPA applies retroactively, the district court did not violate the law of the case.
In Dobbs I, we stated that we did not reach the preemption issue because we were remanding to allow the district court to consider “whether federal or state law applies to an employee benefit plan established and maintained by a tribe for the benefit of its employees ... in light of a recent change in federal law.” 475 F.3d at 1177. Thus, we allowed the district court to consider the effect of the PPA in the first instance. Because we declined to reach the issue of the effect of the PPA, the law of the case did not bar the district court from considering that issue on remand. See United States v. Wittig, 575 F.3d 1085, 1097 (10th Cir.2009) (“The law of the case does not extend to issues a previous court declines to decide.”).
According to the majority, the prior panel decided the effect of the PPA by necessary implication because “(1) resolution of the issue was a necessary step in resolving the earlier appeal; [and] (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal.... ” Guidry v. Sheet Metal Workers Int’l Ass’n, Local No. 9, 10 F.3d 700, 707 (10th Cir.1993). I conclude that neither situation applies to the case at bar.
The resolution of the retroactivity issue was not a necessary step in resolving the earlier appeal. We resolved the earlier appeal by directing the district court to consider whether federal or state law applied to the benefits plan in light of the PPA. The majority relies heavily on our statement in Dobbs I that: “[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” 475 *1288 F.3d at 1179. According to the majority, this means that we “expressly remandfed] only the fact-specific analysis and conclud[ed] that this analysis alone would determine if ERISA preempted the Dobbs’ claim....” Maj. Op. at 1280. I disagree. We explicitly did not reach the preemption issue. See Dobbs I, 475 F.3d at 1177 (“We do not reach the [preemption issue] because we remand the case so that the District Court can consider [whether federal or state law applies] in light of a recent change in federal law.”). Therefore, our statement that “[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem,” id. at 1179, is best understood as dicta, which “is not subject to the law of the case doctrine.” Homans v. City of Albuquerque, 366 F.3d 900, 904 n. 5 (10th Cir.2004). Further, we did not remand to the district court simply to conduct factfinding; rather, we issued a broader remand. See Pittsburg County 358 F.3d at 711 (noting that the law of the case did not apply because “the remand to the district court was general, stating only that the remand was ‘for further proceedings consistent with this opinion.’ ”). We remanded to the district court to consider in the first instance whether state or federal law applied in light of the PPA.[2] “When further proceedings follow a general remand, the lower court is free to decide anything not foreclosed by the mandate issued by the higher court.” Guidry, 10 F.3d at 706 (quotations omitted).
Additionally, I disagree with the majority’s conclusion that the district court “directly contravened the instruction from Dobbs I and thus abrogated that decision.” Maj. Op. at 8-9. To the contrary, the district court did what we directed it to do — it considered whether federal law applied in light of the enactment of the PPA. Thus, the district court did not abrogate Dobbs I. Accordingly, I would conclude that the prior panel did not decide by necessary implication that the PPA applied retroactively, and I would turn to the merits of the issues before this court.
In summary, I differ from the majority’s views in these regards. The majority takes a very narrow reading of Dobbs I, relying entirely on a single sentence: “If the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” Dobbs I, 475 F.3d at 1179. But the majority seems to ignore the other language that suggests a broader remand, e.g., “We do not reach the [preemption issue] because we remand the case so that the District Court can consider [whether federal or state law applies] in light of a recent change in federal law.” Id. at 1177. Ultimately, the majority appears to start from the conclusion that we decided the “retrospectivity” question and remanded only for factual analysis. For example, the majority reasons: “We did not issue a broad mandate to reconsider our determination that the PPA applies retrospectively,” Maj. Op. at 1280 n.2, but this begs the question — it assumes that we made that *1289 determination in the first place. Further, the majority suggests that we answered the retrospectivity issue when we remanded “only the fact-based analysis ‘to the District Court for consideration in light of the amended definition.’” Maj. Op. at 1281 n.3 (quoting Dobbs I, 475 F.3d at 1178). If that is indeed the majority’s interpretation, that is a rather strained reading of “for consideration in light of the amended definition.” Moreover, we issued a rather generic, open-ended mandate, which stated: “In light of the amended definition of ‘governmental plan’ under ERISA, we VACATE the District Court’s order and REMAND for further proceedings consistent with this opinion.” Dobbs I, 475 F.3d at 1179.
Reading Dobbs 7 as a whole, I conclude that we remanded the case to the district court for consideration in light of a change in federal law, not simply to conduct fact-finding. Because we did not remand only the factual analysis, we did not decide by implication that the PPA applies retrospectively. Consequently, the law of the case doctrine does not apply.
B
Even if the law of the case doctrine is applicable, it does not bar us from considering the issue of retroactivity. “We have routinely recognized that the law of the case doctrine is discretionary, not mandatory, and that the rule merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.” Kennedy v. Lubar, 273 F.3d 1293, 1299 (10th Cir.2001) (quotations omitted). One well-recognized exception to the law of the case doctrine is “when the decision was clearly erroneous and would work a manifest injustice.” McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir.2000) (quotation omitted). If, as the majority concludes, the prior panel implicitly decided that the PPA “applies retrospectively to the events at issue,” Maj. Op. at 1285, that decision was clearly erroneous. As explained more fully in the discussion that follows, based on the plain text of the statute, the PPA is unambiguously prospective only, and prior to the PPA, ERISA applied to pension plans established and maintained by Indian tribes.[3]
Further, this clear error could work a manifest injustice by depriving Anthem of the “opportunity to present [its] dispositive defense [of preemption] — a defense that fully vindicates [Anthem’s] right to be free from a trial and an adverse damage award.” See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Planning Agency, 216 F.3d 764, 789 (9th Cir.2000) (exercising its discretion to depart from the law of the case where the prior panel’s clear error would work a manifest injustice by depriving the defendants of their statute of limitations defense). Additionally, by concluding that the PPA has retroactive effect, there could be serious economic consequences for insurers such as Anthem who would be open to substantial liability under state law causes of action. Cf. Mendenhall, 213 F.3d at 469 (prior panel’s error would work a manifest injustice when the failure to cap attorneys’ fees threatened “adverse fiscal consequences” to the U.S. Treasury that “could prove substantial”). Accordingly, I would exercise our discretion to depart from the law of the case.
*1290 II
A
Prior to the PPA, ERISA defined “governmental plan” in relevant part as “a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.” ERISA, Pub.L. No. 93-406, § 3(32), 88 Stat. 829, 837 (1974) (current version at 29 U.S.C. § 1002(32)). In August 2006, however, Congress amended the definition of “governmental plan” under ERISA to include certain plans established and maintained by Indian tribes. The amended definition provides:
The term “governmental plan” includes a plan which is established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of the Internal Revenue Code of 1986), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of such Code), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function)])]
PPA, Pub.L. No. 109-280, § 906(a)(2)(A), 120 Stat. 780, 1051 (codified as amended at 29 U.S.C. § 1002(32)).
Therefore, if the new definition applies to the Dobbses’ plan, then the plan will fall within the exception to ERISA preemption, and their state law claims would not be preempted by ERISA. Anthem, however, contends that the Dobbses’ plan is not encompassed within the new definition because the new definition does not apply retroactively.
The Supreme Court has recently explained the proper sequence of analysis regarding retroactivity of statutes:
We first look to whether Congress has expressly prescribed the statute’s proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result.
Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37-38, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006) (internal quotations, citations, and alterations omitted). Thus, our first inquiry is whether Congress “has expressly prescribed the statute’s proper reach.” Id. at 37, 126 S.Ct. 2422.
The stated effective date of the PPA amendment to the definition of governmental plan is as follows: “Effective Date. — The amendments made by this section shall apply to any year beginning on or after the date of the enactment of this Act.” PPA § 906(c), 120 Stat. 780, 1052. The date of enactment of the PPA was August 17, 2006. Pub.L. No. 109-280, 120 Stat. 780,1172.
The plain language of this effective date provision dictates that the amended definition shall apply to any “year” beginning on or after August 2006. To determine what “year” means, we look first to the text to discern the meaning. See Wright *1291 v. Fed. Bureau of Prisons, 451 F.3d 1231, 1234 (10th Cir.2006) (stating that for issues of statutory construction, we should “interpret the words of the statute in light of the purposes Congress sought to serve” and that we should begin with “the language employed by Congress,” and “read the words of the statute in their context and with a view to their place in the overall statutory scheme” (internal quotation omitted)); Colorado High Sch. Activities Ass’n v. Nat’l Football League, 711 F.2d 943, 945 (10th Cir.1983) (“A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” (internal quotation omitted)).
Anthem contends that “year” unambiguously means “plan year” and that therefore the clear language of the statute is that it applies prospectively to plan years established and maintained after August 2006. The Dobbses contend that Congress used the phrase “plan year” in other portions of the statute, and that if Congress had intended to mean “plan year,” it would have said so. The Dobbses argue that “year” is more broad, and means that the PPA’s change to the definition of governmental plan applies to any “issues” “in the present year” that arise “under earlier ‘plan years.’” Appellants’ Br. at 33-34.
The majority appears to find the Dobbses’ argument persuasive, see Maj. Op. at 1281-82, but I cannot square the Dobbses’ argument with the text of the statute. The text of section 906(a) of the PPA amends the definition for governmental plans (and therefore the exception from preemption) to include certain pension plans “established and maintained by an Indian Tribal government.” PPA § 906(a)(2)(A). The effective date states that this amended definition, and therefore exception from preemption, applies “to any year beginning on or after” August 2006. Id. § 906(c). “A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date.” Landgraf v. USI Film Prods., 511 U.S. 244, 257, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (footnote omitted).
I conclude this language unambiguously states that the new definition applies only to governmental plans beginning on or after August 17, 2006. See Lockheed Corp. v. Spink, 517 U.S. 882, 896-97, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (“Where, as here, the temporal effect of a statute is manifest on its face, there is no need to resort to judicial default rules, and inquiry is at an end.” (internal quotation omitted)). No party has pointed to any legislative history that would provide otherwise. See Colorado High Sch. Activities Ass’n, 711 F.2d at 945 (“If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.” (internal quotations omitted)).[4] It is not the province of this court to revise a statute when the express language of the statute is clear. See Reames v. Oklahoma ex rel. Okla. Health Care Auth., 411 F.3d 1164, 1173 (10th Cir.2005).
*1292 Additionally, I disagree with the majority’s contention that Congress has given contrary indications regarding the proper reach of subsection 906(a) of the PPA. The majority concludes that subsection 906(b) uses the term “clarification” and thus, Congress “indicate[d] an intent that the amendment apply retrospectively.” Maj. Op. at 1282. To be sure, “[w]hen Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation.” Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1283 (10th Cir.2009). But Congress did not use the term “clarification” in subsection 906(a), which amended ERISA’s definition of “governmental plan.” Congress used the term “clarification” only in subsection 906(b), which does not apply to ERISA.[5] Although subsection 906(b) may make “clarifying rather than substantive” changes, Maj. Op. at 1282 n.6, it does not follow that subsection 906(a) is a clarification. Subsection 906(a) — the only relevant subsection that amends ERISA — does not use the term “clarification.” Thus, I see no contrary indications from Congress or tension within section 906: subsection 906(a) amends the definition of governmental plans to include certain plans of Indian tribes, and subsection 906(b) is a “clarification” of the Internal Revenue Code.
Congress “has expressly prescribed the statute’s proper reach,” as prospective from the effective date, and thus, our retroactivity analysis is at an end. Landgraf, 511 U.S. at 280, 114 S.Ct. 1483. As a result, the amended statutory definition of governmental plan in the PPA does not apply to the case at bar.
Moreover, I disagree with the majority’s analysis at the next step of the Landgraf analysis, whether the PPA would have retroactive effect. The majority concludes that because of “[o]ur precedent exempting Indian tribes from the preemptive reach of federal regulatory schemes ... the prior panel’s determination that ERISA was always intended to exclude tribal plans was not clearly erroneous.” Maj. Op. at 1283. First, the prior panel’s decision in Dobbs I does not reach this conclusion explicitly. Second, as discussed more fully below, I think our precedent is clear that prior to the PPA, ERISA applied to plans established or maintained by Indian tribes.
Further, the PPA did not simply amend the definition of “governmental plan” to include all plans established and maintained by Indian tribes. Rather, the PPA included a very specific kind of tribal plan.[6] It must be a plan where “all of the participants of which are employees of such entity substantially all of whose services as *1293 such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).” PPA § 906(a)(2)(A). There is no suggestion that ERISA was always intended to exclude this specific formulation of tribal plan. Thus, I cannot conclude that the PPA merely clarified the definition of “governmental plan.” Expanding an exemption to ERISA preemption is a profound change in existing law, with effects on the providers of employee benefit plans such as Anthem. Accordingly, I would adhere to the presumption that “[i]f the statute would operate retroactively, ... it does not govern absent clear congressional intent favoring such a result.” Landgraf, 511 U.S. at 280 114 S.Ct. 1483.
However, this conclusion does not end the inquiry because the Dobbses have also argued that even if the PPA does not apply retroactively, the earlier version of ERISA would not preempt their claim. They contend that our circuit does not construe federal regulatory statutes to cover tribal governments unless Congress expresses its intent to cover tribes. The majority also relies on our precedent exempting Indian tribes from certain federal regulatory schemes, but the majority does so under its inquiry into whether the PPA has retroactive effect or if it is merely a clarification. Regardless of the context, I would conclude that our precedent clearly establishes that prior to the enactment of the PPA, ERISA applied to plans established or maintained by Indian tribes.
B
The majority states that “[i]n this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization.” Maj. Op. at 1283. But our case law recognizes a distinction between cases where a tribe “has exercised its authority as a sovereign” and where a tribe acts “in a proprietary capacity such as that of employer or landowner.” NLRB v. Pueblo of San Juan, 276 F.3d 1186, 1199 (10th Cir.2002) (en banc) (emphasis added).
When an Indian tribe is acting in its proprietary capacity, we apply the rule set forth in Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). See Pueblo of San Juan, 276 F.3d at 1199. As the Supreme Court stated in Tuscarora: “a general statute in terms applying to all persons includes Indians and their property interests.” 362 U.S. at 116, 80 S.Ct. 543. We have recognized three exceptions to the Tuscarora rule:
(1) the law touches exclusive rights of self-governance in purely intramural-matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations.
Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 984 (10th Cir.2005) (Lucero, J., concurring) (quoting Nero v. Cherokee Nation of Okla., 892 F.2d 1457, 1462-63 (10th Cir.1989)).
Thus, to determine whether a generally applicable federal statute applies to an Indian tribe, we must first determine whether the tribe is exercising its sovereign authority or whether it is acting in its proprietary capacity. See Pueblo of San Juan, 276 F.3d at 1199. If the tribe is exercising its authority as a sovereign, the Tuscarora rule does not apply. Id. However, if the tribe is acting in its proprietary capacity, the Tuscarora rule does apply, see id., and we must then determine whether there is an exception to that rule, see Nero, 892 F.2d at 1462-63.
*1294 Applying this framework to the case at bar, it is clear that the Tuscarora rule applies. The present case involves an Indian tribe acting in its proprietary capacity as employer or purchaser of insurance, not in its sovereign authority. See Pueblo of San Juan, 276 F.3d at 1199. Although we have previously held that certain federal regulatory schemes do not apply to Indian tribes as employers, those cases involved Indian treaties. See EEOC v. Cherokee Nation, 871 F.2d 937, 938 (10th Cir.1989) (“[W]e hold that ADEA is not applicable because its enforcement would directly interfere with the Cherokee Nation’s treaty-protected right of self-government.”); Donovan v. Navajo Forest Prods. Indus., 692 F.2d 709, 710 (10th Cir.1982) (agreeing that to “apply OSHA to [the tribal entity] would violate the Navajo Treaty”). The majority attempts to wave away this critical distinction by citing Pueblo of San Juan for the proposition that we have since “recognized that a treaty [is] not a necessary prerequisite to exemption.” Maj. Op. at 1284. But Pueblo of San Juan did not rely on the existence of a treaty because that case involved a Tribe’s inherent sovereign authority: the authority to enact its own laws in its territory. See 276 F.3d at 1195 (“In the absence of clear evidence of congressional intent ... federal law will not be read as stripping tribes of their retained sovereign authority to pass right-to-work laws and be governed by them.”). Where a tribe’s sovereign authority is not at issue, such as when it is acting as an employer, we do not apply Pueblo of San Juan, but we apply the Tuscarora rule.
The majority does not identify precisely what sovereign authority it believes is at stake. The majority refers to the “sovereign authority to regulate economic activity within their own territory.” Maj. Op. at 1284 (quoting Pueblo of San Juan, 276 F.3d at 1192-93). But the case at bar involves no regulation of economic activity. Cf. Pueblo of San Juan, 276 F.3d at 1195 (discussing tribes’ “retained sovereign authority to pass right-to-work laws and be governed by them”). The majority also suggests that “[a]pplying ERISA to such plans would prevent tribal governments from purchasing insurance plans for governmental employees in the same manner as other government entities, thus treating tribal governments as a kind of inferior sovereign.” Maj. Op. at 1284 (emphasis added). Thus, the majority shifts from a tribe’s sovereign authority to regulate economic activity to its ability to act as a purchaser of insurance, without clarifying how the purchasing of insurance plans is a sovereign authority. Moreover, our inquiry is whether sovereign authority is at issue, not whether the federal government treats different sovereigns differently, or even somehow as an “inferior sovereign.” In Pueblo of San Juan, we recognized that the Tuscarora rule “does not apply ... where the matter at stake is a fundamental attribute of sovereignty and a necessary instrument of self government and territorial management....” 276 F.3d at 1200 (quotations omitted). Here, there is no sovereign authority at stake, and therefore, the Tuscarora rule applies.
Applying the Tuscarora rule to this case, I would conclude that prior to the PPA, ERISA applied to Indian tribes. The Seventh Circuit was faced with the same question in Smart v. State Farm Insurance Co., 868 F.2d 929 (7th Cir.1989), prior to the enactment of the PPA. In that case, a member of an Indian tribe (the insured) sued the insurer alleging that the insurer failed to pay claims for medical expenses. 868 F.2d at 930. The insured claimed that ERISA did not apply to “an employee benefits plan established and operated by an Indian Tribe for Tribe employees. ...” Id. The Seventh Circuit recognized that “ERISA is clearly a statute of general application, one that envisions in *1295 elusion within its ambit as the norm.” Id. at 933. Then, the Smart court applied the Tuscarora rule and its exceptions — the same exceptions that this circuit recognizes. See id. at 934-36; Nero, 892 F.2d at 1462-63 (recognizing the three exceptions to the Tuscarora rule). First, the court was unable “to uncover a single specific treaty or statutory right that would be affected by application of ERISA.” Smart, 868 F.2d at 935. Similarly, neither the Dobbses nor the majority have identified a treaty or statutory right that would be affected by application of ERISA.
The Seventh Circuit in Smart then turned to whether ERISA would interfere with the Tribe’s “self-governance in intramural affairs.” Id. The Court stated:
The application of ERISA to this case would not impermissibly upset the Tribe’s self-governance in intramural matters. ERISA does not broadly and completely define the employment relationship — even less so than the federal withholding tax. It is only applied to an employment relationship if the employer decides to offer an employee benefit plan. Even then, ERISA merely requires reporting and accounting standards for the protection of the employees. Moreover, the activity underlying this challenge to ERISA is the Tribe’s subscription of services and pooling of risks with [the insurer], an outside, non-Indian agent. ERISA is instructive on how a covered health insurance plan operates vis-á-vis the beneficiaries and the trustee, not between the [health center] and [the plaintiff]. In sum, plaintiff has failed to demonstrate how ERISA will intrude upon Tribal self-governance; ERISA merely imposes beneficiary protection while in no way limiting the way in which the Tribe governs intramural matters.
Id. at 935-36 (footnotes omitted). Again, neither the Dobbses nor the majority have identified or discussed how ERISA would upset tribal self-governance in intramural matters.
. Finally, the Seventh Circuit concluded that the plaintiff was “unable to point to any evidence of congressional intent that ERISA is not applicable to Tribe employers and Indians.” Id. at 936. In the case at bar, the Dobbses argue that there is such evidence because Congress defined a governmental plan to include any “instrumentality” of a “State or political subdivision thereof....” 29 U.S.C. § 1002(32). The Seventh Circuit rejected a similar argument that the then-effective version of ERISA indicated “Congress’ unwillingness to have ERISA apply to sovereigns generally, and thus Indian tribes should also be similarly exempt....” 868 F.2d at 936. The court noted that there are “significant differences between states and their political subdivisions on one hand and Indian Tribes on the other.” Id. The majority appears to agree that “an Indian tribal government does not fit into any of the articulated categories” under ERISA prior to the PPA. Maj. Op. at 1284.
I find the Seventh Circuit’s analysis of ERISA under the Tuscarora rule and its exceptions to be very persuasive, particularly where the Dobbses have made nearly identical arguments to those made by the plaintiffs in Smart. See also Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus., 939 F.2d 683, 686 (9th Cir.1991) (holding that ERISA applies to a tribally owned and operated mill). The majority appears to disagree, relying on our “presumption against extending federal regulatory schemes to Indian tribal governments. ...” Maj. Op. at 1284 n.9. But our presumption, articulated in Pueblo of San Juan, is a presumption against extending certain federal laws and regulatory schemes to Indian tribal governments acting in their sovereign authority. Be *1296 cause this is not a case involving a tribe’s sovereign authority, I would agree with the Seventh Circuit’s application of the Tuscarora rule, and I would conclude that ERISA applied to plans established or maintained by Indian tribes prior to the PPA. Following this rationale, I would also conclude that the district court correctly ruled on remand that the pre-PPA version of ERISA did not exempt the Dobbses’ claim from ERISA coverage.
Ill
Although I agree with Part III of the majority opinion, I write separately to emphasize why the Dobbses’ fraudulent inducement claim is preempted by ERISA.
The Dobbses’ amended complaint alleged in part as follows:
81. Through literature ... Anthem represented that its Blue Preferred policy allowed insureds to see any Blue Cross Blue Shield Provider and receive coverage at in-network levels....
82. The statements were false.
83. Anthem knew or should have known its statements were false.
84. Anthem refused to provide the highest level of benefit under the Policy-even [sic] when the Dobbs met Anthem’s requirements and conditions.
85. Anthem’s refusal to provide the promised service and benefits has caused the Dobbs significant economic and noneconomic damages.
App. at 11. I agree with the majority that the Dobbses’ claim, although styled as “fraudulent inducement,” appears to be a claim for benefits: the Dobbses alleged that “Anthem refused to provide the highest level of benefit under the Policy,” and Anthem refused “to provide the promised service and benefits .... ” Id. (emphasis added).
“[T]he allocation of benefits under an employee benefits plan goes to the core of ERISA, and so such claims are usually preempted.” Woodworker’s Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 991 (10th Cir.1999); see also Variety Children’s Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir.1995) (finding preemption “where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits”). Moreover, the fraudulent inducements claims are preempted because the “factual basis for ... plaintiffs’] state law claim[ ] directly concerns the alleged improper administration of the benefit plan.” Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir.1991).
Further, the Dobbses’ claim could affect the structure, administration, or benefits provided by the plan. Cf. Airparts Co. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1066 (10th Cir.1994) (“Plaintiffs make no claim based on any rights under the plan; there is no allegation that any of the plan’s terms have been breached.”). “What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefits plans, such as determining an employee’s eligibility for a benefit and the amount of that benefit.” Id. at 1065 (quotation omitted). The Dobbses’ action, which is based on Anthem’s alleged refusal to provide benefits under the policy, could “interfere with the calculation of benefits owed to an employee,” and thus, is preempted. See Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1452 (10th Cir.1992) (quotation omitted).
I would affirm the district court’s ruling that the PPA does not apply retroactively to the plan in question and that the preamendment version of ERISA preempts *1297 the Dobbses’ state law claims. Given that conclusion, I would not reach whether the district court properly conducted its fact finding.

. Part I of the majority opinion sets out the factual background and procedural history of the case. Parts II and III contain the legal analysis pertaining to the issues raised. Parts II and III are the focus of this separate opinion.

. Moreover, the parties did not argue the retroactivity issue in Dobbs I. Indeed, neither party even alerted us to the enactment of the PPA while Dobbs I was pending, and we found it necessary to remind the parties of the importance of filing a notice of supplemental authority under Federal Rule of Appellate Procedure 28(j). See Dobbs I, 475 F.3d at 1179. Under these circumstances, it is particularly troubling that the majority concludes that we are bound by the law of the case. Cf. Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 469 (9th Cir.2000) (departing from the law of the case when the prior panel clearly erred “for want of proper briefing’’).

. The majority contends that I reach this conclusion "after engaging in a de novo analysis.” Maj. Op. at 1285. Because the law of the case doctrine does not bar our consideration, I would review the retroactivity issue de novo. Nonetheless, I would reach the same conclusion under clear error analysis, as I have a "clear conviction of error with respect to a point of law on which [the] previous decision was predicated.” Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir.1981) (quotation omitted).

. If anything, the legislative history supports the conclusion that the PPA as enacted should be applied only prospectively. An earlier version of the bill provided for the effective date as follows: "The amendments made by this subtitle shall apply to any year beginning before, on, or after die date of the enactment of this Act.” S. 1783, 109th Cong. § 1314 (2005). However, the ultimate version that was passed stated: "any year beginning on or after the date of the enactment of this Act.” PPA § 906(c). At the very least, the legislative history is hardly an expression of clear legislative intent that the PPA should be applied retroactively.

. Subsection 906(b) of the PPA, as originally enacted, amended ERISA at 29 U.S.C. § 1321 to include certain Indian tribal pension plans. However, Congress enacted technical corrections to the PPA in 2008. Following these technical corrections, subsection 906(b) amends only the Internal Revenue Code, not ERISA. SeePub.L. No. 110-458, § 109(d)(2), 122 Stat. 5092, at 5112.

. The legislative history suggests that Congress originally considered a version of the PPA that amended ERISA to include in 29 U.S.C. § 1321(b) the following language: "established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of the Internal Revenue Code of 1986), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of such Code), an agency or instrumentality of an Indian tribal government or subdivision thereof, or an entity established under Federal, State, or tribal law that is wholly owned or controlled by any of the foregoing.” S. 1783, 109th Cong. § 1313(b) (2005) ("Pension Security and Transparency Act of 2005”). But the enacted version of the PPA included a much more specific formulation. See PPA § 906(a).