SILBERMAN, Senior Circuit Judge,
dissenting:
The court’s opinion, in my view, is unsound doctrinally, both with regard to principles of statutory interpretation and to basic tenets of administrative law. The Department of Treasury, through its Office of Foreign Assets Control (“OFAC”), has allowed Cuban companies to register *804 trademarks in the United States under the Cuban Assets Control Regulations, see 28 Fed.Reg. 6974, 6982 (July 9, 1963), even though the companies are not permitted to sell their products here.[1] Cubaexport obtained its HAVANA CLUB trademark in 1976, pursuant to a general license in the Cuban Assets Control Regulations authorizing “[transactions related to the registration and renewal ... of patents, trademarks, and copyrights in which the government of Cuba or a Cuban national has an interest.” 31 C.F.R. § 515.527(a)(1).
When Cubaexport sought to renew its trademark in 2006, OFAC, by a letter (an informal adjudication), concluded that renewal of the HAVANA CLUB trademark was prohibited. OFAC’s director explained in a declaration to the district court that he based this decision on 31 C.F.R. § 515.527(a)(2), OFAC’s regulation implementing section 211. OFAC also denied Cubaexport’s request for a specific license to renew its trademark based on the same regulation. Nowhere in its declaration did OFAC ground its decision in its power to modify or revoke a general license pursuant to 31 C.F.R. § 501.803 (upon which the majority puts great significance).
My disagreement with the majority centers, on the court’s disposition of Cubaexport’s retroactivity argument. Cubaexport contends that the presumption against retroactivity, see Landgraf v. USI Film Prods., 511 U.S. 244, 278-80, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994),[2] requires us to read section 211 as barring only the new registration of trademarks, not the renewal of previously-registered trademarks such as Cubaexport’s. The majority dismisses this appeal based on its notion that Cubaexport lacks a “vested right” in its HAVANA CLUB trademark. See Maj. Op. at 798. My colleagues may well be correct that the power OFAC enjoys to modify or revoke its trademark license at any time defeats Cubaexport’s constitutional claim, but I do not think it appropriate to reach that question because I believe Cubaexport should prevail on its statutory interpretation argument, and the case should be remanded.
The majority, apparently using the term “vested rights” to mean something more than substantive rights, Maj. Op. at 798, misapplies governing Supreme Court jurisprudence regarding the interpretation of statutes — indeed does so in a fashion that drives a large hole in the presumption against retroactivity. The recent Supreme Court case upon which the court relies, Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006), states that “[sjtatutes are disfavored as retroactive when their application ‘would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.’ ” 548 U.S. at 37, 126 S.Ct. 2422 (quoting Landgraf, 511 U.S. at 280, 114 S.Ct. 1483). To be sure, Femandez-Vargas cited an early case in which Justice Story referred to “vested rights,” see id. (quoting Soc’y for the Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (No. 13,156) *805 (C.C.D.N.H.1814)), but Fernandez-Vargas then equated “vested” with “substantive” (as distinct from procedural), id. The Supreme Court’s retroactivity jurisprudence consistently frames the protected rights as “substantive.” See, e.g., Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Landgraf, 511 U.S. at 278, 114 S.Ct. 1483. (In his Landgraf concurrence, Justice Scalia made clear that the majority’s use of the phrase “vested rights” meant only to differentiate substantive rights from procedural ones. See Landgraf, 511 U.S. at 290-91, 114 S.Ct. 1522 (Scalia, J., concurring).) Indeed, the other cases cited by the majority also use “vested” and “substantive” interchangeably.[3] If the presumption against retroactive legislation protected only substantive rights that are somehow invulnerable— that could not be threatened by other legal attacks — the presumption’s value would be degraded substantially.
There is no question that Cubaexport had a substantive “right” to its trademark; otherwise, what did its trademark mean? Whether OFAC could revoke that right— and under what conditions[4] — is quite beside the point. As I noted, the government nowhere purported to exercise its revocation authority in this case. (It may well be that an OFAC license revocation carries implications not apparent to us.) It is, moreover, a patent violation of SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), for a reviewing federal court to uphold agency action based on a legal theory — let alone a potential agency action — that the agency did not initiate or embrace. That the government contends that OFAC could exercise that power, as Chenery explained, decidedly is not a relevant consideration. Chenery, 318 U.S. at 88, 63 S.Ct. 454.
In any event, as the majority concedes, Maj. Op. at 798 n. 4, quite apart from its “vested rights” approach to the presumption against retroactivity, the presumption applies, as well, if a statute would “impose new duties with respect to transactions already completed.” Fernandez-Vargas, 548 U.S. at 37, 126 S.Ct. 2422. As I discuss below, OFAC, by interpreting section 211’s “transaction” to not include a renewal of a trademark — and therefore to require Cubaexport to seek a new license for its renewal — is certainly imposing a new duty if renewal rights are automatic, and bound up with the initial registration of the trademark. I think the majority errs in not reading Cubaexport to assert that it did not complain that section 211 imposed any new or increased liabilities or duties for past conduct. See Maj. Op. at 798 n. 4. Cubaexport broadly argued that section 211 “ ‘attaches new legal consequences to events completed before its enactment.’ ” Appellant’s Opening Brief at 27 (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483).[5]
*806 Turning to Cubaexport’s argument that the government is improperly applying section 211 retroactively, the obvious initial inquiry is whether section 211 speaks prospectively only, or both prospectively and retrospectively. I think section 211 is more naturally read — even without the presumption — as applying to the future only. It states that “[njotwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to Section 515.527” (the licensing regulations). Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105-277, 112 Stat. 2681 (1998), § 211 (emphasis added). OFAC obviously realized this because it issued a regulation implementing the statute, which changed “shall be authorized or approved” to “is authorized or approved” (which the majority ignores). 31 C.F.R. § 515.527(a)(2) (emphasis added). And the district court also saw section 211 as speaking only prospectively, but it concluded that although Cubaexport’s registration of its trademark was unaffected, a renewal could be stopped because it was a separate “new” transaction. See Empresa Cubana Exportadora de Alimentos y Productos Varios v. Dep’t of Treasury, 606 F.Supp.2d 59, 81 (D.D.C.2009). That is the government’s essential statutory argument before us — not the “vested rights” theory advanced by the majority — that renewal was a new transaction that OFAC had to authorize or approve, and therefore section 211 applied to all trademark renewals undertaken after its passage.
The key question, then, is the interpretation of the word “transaction” in section 211. I read section 211 as certainly, at least, suggesting that a “transaction” includes both the registration, as well as necessary renewals, because renewal is not separately mentioned, and therefore implicitly is coupled with the initial license registration. Cubaexport drives that point home by persuasively explaining that under our governing trademark law, a holder’s right to a trademark, “once acquired,” is “perpetual” unless abandoned. Ewing v. Standard Oil Co., 42 App. D.C. 321, 324 (1914); see also Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). Renewal “in no sense confers new rights,” and instead, “amounts only to a record of existing rights.” Ewing, 42 App. D.C. at 324. The government would have us ignore Ewing simply because it is an old case — but that argument is silly. In any event, it seems clear that the Patent and Trademark Office must renew a trademark when requested, so long as the holder pays the usual fee and submits an affidavit describing the mark’s use or explaining its non-use. See 15 U.S.C. §§ 1058(b), 1059(a). The only purpose of a renewal is to remove an abandoned trademark from the register. See Ewing, 42 App, D.C. at 324; In re Bose Corp., 580 F.3d 1240, 1246 (Fed.Cir.2009); Torres v. Cantine Torresella S.r.l, 808 F.2d 46, 48 (Fed.Cir.1986). It does not add to, subtract from, or alter a trademark holder’s substantive rights in the trademark. The government does not dispute this proposition.
To be sure, the use of the additional word “payment” in section 211 is anomalous. It is possible, although hardly obvious, that by using the word “payment” Congress sought to require a Cuban trademark holder to obtain a separate payment license before it could renew its trademark. If we give “payment” this separate meaning, it would render invalid section 515.527(a)(l)’s implicit authorization to pay renewal fees. And, as a result, section 211 would have retroactive effect. But while this reading is barely plausible, certainly section 211 does not mandate it. At most, this plausible interpretation of “payment” creates an ambiguity as to whether section 211 authorizes OFAC to act retroactively.
*807 The majority is not influenced by the Second Circuit’s observation, in a related case, that “[sjince section 211 does not clearly indicate that it should be applied retroactively, the traditional presumption against retroactivity would likely apply.” Havana Club Holding SA v. Galleon SA, 203 F.3d 116, 128-129 (2d Cir.2000).[6] The Second Circuit dutifully relied on the Supreme Court’s opinion in Landgraf, the leading case explaining that a statute is presumed to apply prospectively only, in observing that section 211 should be construed as limited to transactions occurring after the statute’s passage. I think we are obliged to do so as well. Our inquiry should be at an end because “the agency has misconceived the law,” and the case should be remanded. Chenery Corp., 318 U.S. at 94, 63 S.Ct. 454.
I respectfully dissent.

. That may be in anticipation of a regime change. As the Solicitor of Labor in 1970 at an International Labor Organization meeting in Geneva, I responded to a Cuban diplomat's attack on the U.S. with a disdainful rejection “because the Cuban government represented only a temporary political phenomenon.” Time has stretched my term "temporary.”

. See also Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.”).

. The majority cites Celtronix Telemetry Inc. v. FCC, 272 F.3d 585 (D.C.Cir.2001), for the proposition that a party does not have a vested right in a licensing regime if the government retains the power to alter the terms of existing licenses by rulemaking. Maj. Op. at 799 (citing Celtronix Telemetry, 272 F.3d at 589). But Celtronix’s holding is not so broad. There, we considered whether a party's right to request payment grace periods for a video and data service license from the FCC was a vested right. Id. at 589. But as Celtronix makes clear, the right in question was merely "procedural.”

. Would not the APA’s arbitrary and capricious standard govern OFAC’s authority?

. Since the majority relies on a "vested rights” theory not advanced by the government, its rather strained contention that Cubaexport did not object to the new duty of renewal — which it did — violates the "chuztpah” doctrine. See Harbor Ins. Co. v. Schnabel Found. Co., 946 F.2d 930, 937 & n. 5 (D.C.Cir.1991); Nw. Airlines, Inc. v. Air Line Pilots Ass’n, Int’l, 808 F.2d 76, 83 (D.C.Cir.1987).

. The Second Circuit’s observation was dicta because the provision at issue, not implicated in this case, spoke of the propriety of prospective relief only. But its conclusion regarding section 211 nevertheless contradicts the majority's opinion and supports my position.