
**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORTHWEST PUBLIC COMMUNICATIONS COUNCIL; UNIDENTIFIED PSPS A TO Z; NPCC MEMBERS, Central Telephone, Inc.; Communication Management Services, LLC; Davel Communications, aka Phonetel Technologies, Inc.; Interwest Tel, LLC; Interwest Telcom Services Corporation; NSC Communications Public Services Corporation, National Payphone Services, LLC; Pacific Northwest Payphones; Partners in Communication; T & C Management, LLC; Corban Technologies, Inc.; Vally Pay Phones, Inc., | No. 10-36077 <br><br> D.C. No. 3:09-cv-01351-BR <br><br> MEMORANDUM[*] |
| Plaintiffs - Appellants, | |
| v. | |
| QWEST CORPORATION, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted May 7, 2013
Portland, Oregon

Before:  GOODWIN, REINHARDT, and BERZON, Circuit Judges.

Plaintiffs-Appellants Northwest Public Communications Council, along with numerous other groups (collectively, NPCC), appeal the dismissal of their federal claims as barred by the relevant statute of limitations.  We review de novo, *Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355, 1357 (9th Cir. 1997), and affirm.

In this context, an action to recover damages must be brought within two years of accrual, and an action to enforce an FCC order for payment must be brought within one year of the order.  47 U.S.C. § 415(b), (f).

In *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006), this court addressed the operation of § 415's time bar.  The *Davel* court, agreeing with the D.C. Circuit, found Davel was on inquiry notice of its claims against Qwest beginning on the deadline by which Qwest failed to file fraud protection rates.  *Id.* at 1091-92 (citing *Sprint Commc'ns Co. v. F.C.C.*, 76 F.3d 1221 (D.C. Cir. 1996)).  The *Davel* court explained:

> As soon as Qwest failed to file fraud protection rates . . . it was in technical non-compliance . . . and Davel was on inquiry notice that it might be paying excessive rates for fraud protection. . . .  The fact that, until Qwest filed its new fraud protection rates in 2003, Davel was *not*

*in a position to determine the precise amount of the overcharges, or even whether the charges were excessive at all*, does not change this result.

*Id.* at 1092 (emphasis added).

Here, NPCC's filing of the "Rate Case" in 2001 is the most obvious example that NPCC was on notice of its claims against Qwest. The district court correctly found this date sufficient to trigger the running of the limitations period. We also note that Qwest's filing of new rates in the wake of the 2003 *Wisconsin Order*, and the PUC's approval of those rates, also put NPCC on notice as to its claims; the 2003 rates indisputably notified NPCC that the rates it was paying earlier were too high.

NPCC raises a litany of reasons to support its failure to file the claims earlier. None are persuasive.

NPCC's separation of powers argument fails. Even if the district court lacked the power to determine actual NST compliance, that is, what rate would bring Qwest into compliance, that question bears only on damages and the court could still rightfully determine liability. *See Davel*, 460 F.3d at 1092.

NPCC's administrative exhaustion argument fails. There is a difference between statutorily-required exhaustion, and exhaustion as a prudential doctrine. *See W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1195-96 (9th Cir. 2008). NPCC has pointed to no statutorily-imposed exhaustion requirement. *Cf.* 47 U.S.C. § 207

(suit for damages actionable in *either* FCC or federal court). Nor has NPCC provided any authority to establish that if a prudential doctrine *might* have been invoked, it prevents accrual of that claim. *See, e.g.*, *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001) (exhaustion of judicial and administrative remedies in § 2241 habeas case is prudential, and therefore subject to waiver of the requirement), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

NPCC's ripeness argument also fails. While the ripeness doctrine precludes adjudicating premature disagreements over administrative policies before formal, final determination, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200-01 (1983), the dispute here concerns Qwest's obligation to pay refunds, not the actual correctness of any determination as to proper NST rates by the Public Utility Commission.

Finally, NPCC's reliance on the filed rate doctrine fails. The filed rate doctrine "bars suits challenging rates which 'if successful, would have the effect of changing the filed [rate].'" *Davel*, 460 F.3d at 1084. Again, this suit does not challenge filed rates. Thus, none of NPCC's cited doctrines would have had the effect of preventing adjudication in federal court prior to the final determination of NST compliance, and therefore they fail to establish that NPCC's claims had not accrued.

NPCC then argues for the application of equitable tolling, an argument the district court properly rejected. NPCC was represented by counsel and, as discussed above, had knowledge of its possible claim. *See Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (equitable tolling looks to whether reasonable plaintiff would know of possible claim; retaining counsel typically ceases tolling). This case does not support application of judicial estoppel either.

In sum, we affirm the district court's dismissal of this case as time barred. We do not reach other issues briefed and argued.

The parties' outstanding motions to strike are all **DENIED**.

**AFFIRMED.**