RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0180p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

ARTURO VELASCO-TIJERO,

*Petitioner,*

*v.*

No. 14-3803

LORETTA E. LYNCH, Attorney General,

*Respondent.*

On Petition for Review from
the Board of Immigration Appeals.
No. A200 872 898.

Argued:  June 17, 2015

Decided and Filed:  August 6, 2015

Before:  GUY, GIBBONS, and ROGERS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Douglas S. Weigle, BARTLETT & WEIGLE CO., L.P.A., Cincinnati, Ohio, for Petitioner.  Jennifer A. Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Mauricio A. Herrera, LEGAL CENTER OF NWA, Lowell, Arkansas, for Petitioner.  Laura Halliday Hickein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

**OPINION**

───────────────

ROGERS, Circuit Judge.  Petitioner is an undocumented alien.  In 1995, an Arkansas court convicted him, on a guilty plea, of shoplifting.  Under the law then in effect, petitioner's conviction and the resulting sentence did not foreclose him from seeking suspension of

deportation in the event the Government sought to deport him. In 1996, however, Congress enacted the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which, among other things, barred someone with petitioner's criminal history from petitioning for cancellation of removal. In 2010, the Government initiated proceedings to remove petitioner from this country. Petitioner conceded removability, but sought to petition the Attorney General for cancellation of removal. The Government denied his petition on the ground that it was foreclosed by AEDPA and IIRIRA. In this appeal, petitioner contends that the otherwise applicable AEDPA and IIRIRA amendments do not apply to undocumented aliens who, like petitioner, pled guilty to a predicate offense before 1996, but were ordered removed after 1996. Petitioner's argument is foreclosed by AEDPA § 435(b), which clearly indicates Congress's intent with respect to the temporal reach of provisions in AEDPA and IIRIRA relating to aliens' eligibility for cancellation of removal. Petitioner's argument that the Board of Immigration Appeals abused its discretion in refusing to remand his case on other grounds is also without merit.

Petitioner is a native and citizen of Mexico who arrived illegally in the United States in 1988. Since then, he has four times been convicted of driving under the influence, most recently in 2010. On June 7, 1995, an Arkansas court convicted him, upon a guilty plea, of property theft. The maximum punishment for petitioner's crime was one year in prison, *see* Ark. Code Ann. §§ 5-36-103, & 5-4-401, but the sentencing court gave petitioner only a suspended sentence of 30 days in jail and ordered him to pay a fine and court costs totaling $257.25. Petitioner's sentence meant he remained eligible, under then-existing immigration laws, to petition the Attorney General for suspension of deportation. *See* 8 U.S.C. § 1254(a)(2) (1994); 8 U.S.C. § 1251(a)(2) (1994). In 1996, however, Congress enacted AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), and IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Those acts made several major amendments to United States immigration laws, a few of which are particularly relevant here. First, IIRIRA merged deportation proceedings into the broader category of "removal proceedings." *See* IIRIRA § 304, codified at 8 U.S.C. § 1229b. As part of that change, the discretionary relief that had been known as "suspension of deportation" was replaced with a similar form of discretionary relief known as "cancellation of removal." AEDPA and IIRIRA also narrowed the class of aliens eligible to petition the Attorney General for

cancellation of removal. Prior to AEDPA and IIRIRA, an alien who, like petitioner, had committed a crime involving moral turpitude could petition the Attorney General for suspension of deportation so long as the alien (1) had not been sentenced to a year or more in confinement for the crime involving moral turpitude, and (2) had not actually spent a year or more in confinement for the crime involving moral turpitude. *See* 8 U.S.C. § 1254(a)(2) (1994); 8 U.S.C. § 1251(a)(2) (1994). Section 435(a) of AEDPA, codified in 8 U.S.C. § 1227(a)(2), and § 304(b) of IIRIRA, codified at 8 U.S.C. § 1229b(b)(1)(C), combined to make ineligible for cancellation of removal any alien convicted of a crime involving moral turpitude punishable by a year or more in prison, regardless of the punishment actually imposed. Petitioner admits he is ineligible for cancellation of removal under this new standard.

In November of 2010, Immigration and Customs Enforcement agents detained petitioner and served him with a Notice to Appear before the Harlingen Immigration Court. The Notice charged petitioner with being "an alien present in the United States who has not been admitted or paroled." Petitioner, accompanied by counsel, appeared before the court and admitted to the factual allegations and the charge of removability in the Notice. He noted, however, that he would seek cancellation of removal on the ground that his removal would cause "exceptional and extremely unusual hardship" to his mother—a legal permanent resident—and his daughter—a U.S. citizen. Petitioner later appeared before an Immigration Judge (IJ) and formally requested cancellation of removal. In response, the Government suggested that petitioner's property theft conviction made him ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C). The IJ thereupon ordered petitioner to file a statement of law explaining why he was eligible for cancellation of removal and set a hearing on the matter.

At the hearing, the Government moved to pretermit petitioner's application—based on petitioner's property theft conviction—and expressly declined to exercise prosecutorial discretion in the matter. The IJ granted the Government's motion, ruling that, under 8 U.S.C. § 1229b(b)(1)(C), petitioner's property theft conviction rendered him ineligible for cancellation of removal. The IJ expressly rejected petitioner's argument that his eligibility for cancellation of removal should be determined by pre-AEDPA and pre-IIRIRA law—*i.e.*, by the law that was in effect at the time petitioner pled guilty and received his sentence. That argument, the IJ said,

was foreclosed by language in AEDPA § 435(b), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which provided that 8 U.S.C. § 1227(a)(2) applied to any alien "against whom deportation proceedings are initiated after the date of the enactment of this Act," regardless of the date of any underlying offense.[1] Because 8 U.S.C. § 1229b(b)(1)(C) prohibited cancellation of removal for aliens convicted of "offenses under" 8 U.S.C. § 1227(a)(2), and because petitioner had been convicted of an "offense under" 8 U.S.C. § 1227(a)(2), the IJ concluded that petitioner was ineligible for cancellation of removal. The IJ thereupon pretermitted petitioner's application and ordered him removed to Mexico.

Petitioner sought review of the IJ's decision by the Board. While that appeal was pending, petitioner's daughter—already a United States citizen—turned 21 years old and filed an alien relative visa petition on petitioner's behalf. Petitioner promptly filed a motion requesting that the Board remand his case to allow him the opportunity to pursue adjustment of status relief in conjunction with his daughter's petition.

The Board affirmed the IJ's decision and denied petitioner's motion for remand. In affirming the IJ's decision, the Board adopted the IJ's reasoning point-by-point. In a paragraph at the end of the opinion, the Board denied petitioner's motion to remand as an "exercise of discretion." The Board concluded that petitioner's "extensive criminal record"—including his shoplifting conviction and four convictions for driving under the influence—"and the lack of any evidence of rehabilitation precludes him from meeting his heavy burden to justify remand, with all its attendant delays." Petitioner petitions for review of the Board's order.

Petitioner's retroactivity argument is foreclosed by the plain language of AEDPA § 435(b). In deciding whether a particular statute operates retroactively, "We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal

---

[1]The full text of AEDPA § 435 reads as follows:

SEC. 435. EXPANSION OF CRITERIA FOR DEPORTATION FOR CRIMES OF MORAL TURPITUDE.

(a) IN GENERAL.—Section 241(a)(2)(A)(i)(II) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(2)(A)(i)(II)) is amended to read as follows:

"(II) is convicted of a crime for which a sentence of one year or longer may be imposed,".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to aliens against whom deportation proceedings are initiated after the date of the enactment of this Act.

reach specifically intended by applying our normal rules of statutory construction." *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 37 (2006). Congress expressly prescribed the temporal reach of 8 U.S.C. § 1227(a)(2) in AEDPA § 435(b), which provides that § 1227(a)(2) "shall apply to aliens against whom deportation proceedings are initiated after the date of the enactment of [AEDPA]." Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). AEDPA § 435(b) clearly makes commencement of removal proceedings—not some other date—the key point for ascertaining whether an alien's conviction is subject to AEDPA-amended 8 U.S.C. § 1227(a)(2). Petitioner is an alien against whom deportation proceedings were initiated after Congress enacted AEDPA. According to the plain language of AEDPA § 435(b), that makes him "an alien . . . convicted of an offense under [8 U.S.C. § 1227(a)(2)]," meaning that, under 8 U.S.C. § 1229b(b)(1)(C), he is ineligible for cancellation of removal.

Petitioner's argument that AEDPA § 435(b) "is silent as to what criminal convictions it should be applied to" is without merit. When Congress specifies that a statute applies to a class of people within a particular window of time—*e.g.*, aliens placed in removal proceedings after AEDPA's enactment—Congress need not further specify that the statute also applies to all subclasses defined by other time windows—*e.g.*, aliens placed in removal proceedings after AEDPA's enactment who committed crimes involving moral turpitude before AEDPA's enactment. Indeed, most of the aliens placed in removal proceedings soon after the effective date must have been convicted of their crimes before the effective date. It would be anomalous to read § 435(b) not to apply the new law to those aliens.

Other courts have read AEDPA § 435(b) as a paradigm example of a clear statement of retroactivity. One court, for instance, observed that AEDPA § 435(b) reflects Congress's determination

> that the deportability-expanding provision in section 435(a) (expanding the types of offenses that make an alien deportable under category of crimes of moral turpitude) applied to an alien even if the alleged criminal conduct and conviction pre-dated AEDPA as long as the individual was not placed in deportation proceedings before AEDPA's enactment.

*Mojica v. Reno*, 970 F. Supp. 130, 172 (E.D.N.Y. 1997). Another court noted that, by making AEDPA § 435(a) "applicable to proceedings initiated on or after the date of [AEDPA's]

enactment," AEDPA § 435(b) "clearly provid[ed] that the proceedings could be based on conduct or events occurring before the AEDPA took effect." *Yesil v. Reno*, 973 F. Supp. 372, 379–80 (S.D.N.Y. 1997); *see also Rogowski v. Reno*, 94 F. Supp. 2d 177, 180 (D. Conn. 1999).

Petitioner otherwise relies on cases in which Congress was not clear about a statute's temporal reach. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994); *INS v. St. Cyr.*, 533 U.S. 289 (2001). Those cases are not applicable here because of the clarity of Congress's retroactivity determination in § 435(b).[2] Petitioner does not argue that statutory retroactivity in this instance would somehow be unconstitutional. Thus, none of petitioner's arguments refutes the plain meaning of AEDPA § 435(b) that AEDPA-amended 8 U.S.C. § 1227(a)(2) applies to aliens convicted of crimes involving moral turpitude before AEDPA's enactment, so long as removal proceedings were not initiated against those aliens prior to AEDPA's enactment.

With respect to petitioner's second contention, the Board also did not abuse its discretion in denying petitioner's motion to remand so that he could request termination of removal proceedings and apply for adjustment of status. "In determining whether the Board abused its discretion, this Court must decide whether the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). Petitioner does not suggest that the Board's denial rested on an impermissible basis. He argues only that the Board: (1) departed from established procedures by denying him the opportunity to present evidence to countervail the Government's evidence about eligibility for adjustment of status; and (2) failed to explain its decision in light of certain equities, such as petitioner's time of residence in the United States, his family ties, and the hardship his removal would cause. The record in this case undermines both contentions.

Petitioner was not precluded from presenting evidence that he warranted a favorable exercise of discretion. In particular, nothing prevented petitioner from identifying such evidence

---

[2]Petitioner does not argue that AEDPA § 435(b), or any analogous provision, applied in *St. Cyr.* AEDPA § 435 pertains only to what qualifies as a crime involving moral turpitude. See *supra* n.1. AEDPA § 435 did not apply in *St. Cyr* because St. Cyr was ordered removed, not for having committed a crime involving moral turpitude, but for having committed an aggravated felony. *See St. Cyr*, 533 U.S. at 315. The meaning of "aggravated felony" is the subject of a different AEDPA amendment, AEDPA § 440(d), the temporal scope of which is not governed by AEDPA § 435(b).

in his motion to remand—where, in fact, he did identify several facts supporting his petition for adjustment of status. Among other things, petitioner's motion for remand emphasized that petitioner's daughter is a U.S. citizen and that, apart from his property theft conviction, petitioner "has not been convicted of any aggravated crime or any other crimes that would make him inadmissible."

Petitioner suggests he was entitled to an opportunity to counter the Board's reasons for denying his adjustment of status, but he has identified no legal authority suggesting that an alien seeking adjustment of status is entitled not just to an opportunity to present evidence supporting his petition, but also to a separate opportunity to counter any evidence on which the Board ultimately relies in denying his petition. In particular, the Board's decision in *Matter of Arai*, 13 I. & N. Dec. 494 (BIA 1970), does not support petitioner's argument. In the first place, the Board in *Arai* expressly stated that mere eligibility for adjustment of status will not automatically result in a grant of relief. *Id.* at 495. Even if it were possible to read *Arai* as establishing a presumption of entitlement to adjustment of status in certain circumstances, moreover, *Arai* makes clear that any such presumption would apply only "[i]n the absence of adverse factors." *Id.* at 496. That language excludes petitioner because, throughout petitioner's removal proceedings, the Government and the Board repeatedly identified specific adverse factors— petitioner's property theft conviction and multiple DUI convictions—warranting denial of relief. The Board did not violate the precedent it set in *Arai* when it declined to remand petitioner's petition.

Finally, the Board adequately explained its decision to deny petitioner's motion to remand, summarizing its rationale as follows:

> The record reflects that the respondent was convicted of a shoplifting offense in 1995 and four DUIs, with the most recent such crime occurring in 2011. The respondent's motion to remand is based on his assertion that he is now eligible to apply for adjustment of status, since his child has reached the age of 21. The respondent's extensive criminal record and the lack of any evidence of rehabilitation precludes him from meeting his heavy burden to justify remand, with all its attendant delays.

That explanation satisfies the standard we have set for the Board when it comes to explaining its reasons for denying a motion to reopen a petition to adjust status. *See Scorteanu v. I.N.S.*,

339 F.3d 407, 412 (6th Cir. 2003) (collecting and summarizing relevant precedents). Petitioner alleges that the Board's order failed to address certain equities—such as petitioner's time of residence in the United States, his family ties, and the hardship his removal would cause—supporting adjustment of status. But the Board cannot be faulted for failing to discuss those considerations when petitioner never mentioned them in his motion. Furthermore, as the Board's order made clear, it was petitioner's "extensive criminal record and the lack of any evidence of rehabilitation" that drove the Board's decision. Neither of those considerations is rebutted by the evidence petitioner wished to put before the immigration court.

The petition is denied.